UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RUBY GOTREAUX** | : | **DOCKET NO. 2:13-cv-581** |
| **VS.** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

### I.
#### PROCEDURAL HISTORY

On June 18, 2010, plaintiff filed an application for supplemental security income benefits alleging disability beginning on February 10, 2010. Tr. 132-35. She claimed disability due to depression, fibromyalgia, lupus, arthritis, hepatitis C, and recovering addiction to drugs. Tr. 146. The claims were initially denied on December 6, 2010. Tr. 66. Plaintiff requested and was granted an administrative hearing which was held on February 10, 2010. Tr. 23-52. Plaintiff was represented by an attorney at the hearing. Plaintiff and a vocational expert ("VE") testified at the hearing.

On March 2, 2012, the Administrative Law Judge ("ALJ") issued an unfavorable

-1-

decision. Tr. 7-18. In his decision, the ALJ found plaintiff had severe impairments of affective disorders and rheumatoid arthritis. *Id.* The ALJ determined that plaintiff was not disabled because she retained the residual functional capacity to perform light work with certain restrictions and that jobs existed in significant numbers in the national economy that plaintiff could perform. *Id.*

Plaintiff filed a request for appellate review of this decision. Tr. 6. On January 16, 2013, the Appeals Council denied her request for review. Tr. 1-5. On March 21, 2013, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## II.
### FACTS AND MEDICAL EVIDENCE

*A. Facts*

Plaintiff was 52 years old on the date of the hearing. Tr. 28. She last worked in 2009 for approximately three months in maintenance at Wal Mart. Tr. 30, 170. Prior to this she worked for about three months at a plant nursery. *Id.* From 1997 through 2001 she kept the books for her husband who owned mobile home parks. Tr. 30. She testified that she completed 11th grade in school and earned her GED. Tr. 29. She is able to read and write the English language and is left hand dominant. *Id.*

She testified that she suffers from rheumatoid arthritis, lupus, depression and chronic liver disease. She is prescribed Plaquenil for her arthritis, Hydrocodone for pain and Ambien to help her sleep. Tr. 30-31. She stated that she was not taking depression medication at the time of the hearing because she was being reevaluated but should be back on medication within the month. Tr. 44. She also testified that she will begin treatment for her liver disease next month. *Id*.

According to plaintiff, the arthritis causes problems with her joints, mainly her right hip, but also her right leg, knuckles, and the left side of her neck. She described the pain as chronic, burning, tingling, and stabbing that radiates into her lower extremities. Tr. 32. She stated that she cannot sit or stand for too long or the pain worsens. She has to alternate positions every fifteen minutes to alleviate the pain. Tr. 32-33. She also lies down throughout the day for twenty to thirty minutes at a time. She stated that her medication somewhat eases her pain but on an average day her pain is an eight on a scale of one to ten. Tr. 33-34. Plaintiff testified that she also suffers from insomnia and gets about four hours of sleep a night. Tr. 34.

Plaintiff testified that she can sit for a maximum of 4 hours in an 8 hour day, walk about 15 minutes at a time, and must lay down about 4 times a day for twenty to thirty minutes. Tr. 36-37. She can carry 5 pounds occasionally, has problems getting up if she stoops, has problems holding things and cannot write for a long period of time because it hurts her neck to use her hands. Tr. 39. She owns a computer but doesn't use it much because the typing causes her pain. Tr. 41.

On a good day plaintiff testified that she can get herself dressed but usually wears "pullover" clothes so she does not have to button. Tr. 40. She drives about once a week or every two weeks to the grocery or to the doctor. Tr. 42. On a typical day she wakes up, tends to her personal hygiene, and has coffee on her porch. Tr. 43. She then goes back inside and continues her day by sitting, standing, and lying down for 15 minutes at a time. *Id.* She testified that she cooks about once a week and takes out the garbage but she puts it in small bags that she can carry. She does not mop, vacuum, clean bathrooms, or do yard work. *Id.*

### B. Medical Evidence

#### 1. Substance Abuse Rehabilitation

Plaintiff was treated at the inpatient detox facility S.T.E P.S. from May 14, 2009, through May 20, 2009, for crack cocaine dependency. She completed all goals of detox and was discharged to Pines Treatment Center where she remained until June 25, 2009. Tr. 196-206. Her discharge summary indicated that she was treated for cocaine/alcohol/opiate dependence and that she completed all treatment objectives and would enter a halfway house, obtain a sponsor, and attend 12-step meetings regularly. Tr. 208-11. She entered the halfway house, Burkhalter Treatment Center on June 25, 2009. Tr. 215-18.

#### 2. J. Gary Booker, M.D.

There are records from one visit with Dr. Booker on August 17, 2009. He diagnosed major depression and chronic pain and prescribed Lyrica, Neurontin, Pristique, Trazadone, and Remeron. Tr. 220-21.

#### 3. Southern Medical Group, Inc., Raul Cardenas, M.D.

On September 29, 2009, at the request of disability services, plaintiff underwent a physical examination conducted by Dr. Cardenas. Her chief complaints were degenerative disc disease in her neck, nerve damage in her neck, and recovery from addiction. She described the pain in her neck as radiating down her shoulder to her arm. She also described problems with balance. She denied current use of alcohol or illegal drugs.

Her physical exam showed some paraspinal muscle spasms around C7, her gait was normal and she was able to rise from a sitting position without assistance, stand on her tiptoes, and heel and tandem walk without problems. She was able to bend and squat without difficulty. Her grip strength was 5/5 strength on right 4/5 on the left with adequate fine motor movements,

dexterity and ability to grasp objects bilaterally.  Dr. Cardenas noted that she did not appear depressed or anxious.  Her neurological testing showed strong neck movement against resistance and good shoulder shrug.  Her motor strength was 5/5 bilaterally in all muscle groups.  A cervical spine x-ray revealed no fracture, dislocation, or scoliosis.  Degenerative disc disease was most prominent at C 6-7 with reactive anterior osteophyte formation.  Overall Impression of the x-ray was mild degenerative changes.

Dr. Cardenas diagnosed hepatitis C and Myelopathy, cervical in origin.  He concluded that based on his examination and the objective evidence plaintiff could sit and/or stand for a full workday.  He found that she would not be able to walk and/or lift/carry objects because of her myelopathy and balance problems.  He determined that she could hold a conversation, respond appropriately to questions, and carry out and remember instructions.  Tr. 223-27.

   4.   *Thomas E. Staats, Ph.D.*

Dr. Staats conducted a mental status examination on September 30, 2009, at the request of disability services.  Plaintiff reported her chief complaints were chronic daily headaches, confused thinking, chronic neck pain, whole-body pain from arthritis and fibromyalgia, severe depression, poor concentration, brief sobriety from polysubstance dependency, and recent onset of tripping, falling, and tremors.  She reported that she has been sober for four and a half months.

Her mental status examination revealed that she was not in acute distress and was mostly stable.  She appeared restless and tremulous.  Her mood was dysphoric, her thinking was intact, logical, and coherent.  She did not exhibit loosening of associations or flight of ideas, delusions, hallucinations, or any other signs of psychosis.  She denied being a danger to herself.  She was oriented to person, place, time, and situation and could carry on a conversation, spell words correctly, and possessed a marginal fund of general information.  Plaintiff's short term,

intermediate, and long term memory was intact. Her concentration and persistence were marginal and she possessed basic math knowledge.

Dr. Staats opined that her prognosis was poor on the short term due to only recent sobriety, poorly-controlled emotional symptom, and pain. He found that she was competent to manage disability funds if she should receive them. His overall impression was pain disorder associated with both psychological factors and a general medical condition, depressive disorder not otherwise specified, generalized anxiety disorder, and polysubstance dependency in brief remission. Tr. 230-32.

### 5.  *Christus St. Patrick Hospital*

On December 23, 2009, plaintiff was seen in the emergency room at St. Patrick Hospital. Notes from a psychiatric consultation indicate that she left a suicide note, argued with a family member, and relapsed on alcohol and cocaine. On December 26, 2009 she was discharged with instructions to follow up at Lake Charles Mental Health and Lake Charles Alcohol and Drug Clinic. Tr. 239-51.

### 6.  *W. O. Moss Regional Medical Center*

Plaintiff received the majority of her health care treatment at Moss Regional. On February 17, 2010, notes indicate that she tested positive for hepatitis C in May of 2009. She had a positive urine screen for cocaine. The diagnostic impression at this visit was hepatitis C virus and active substance abuse. Tr.274.

An ultrasound of her gallbladder on February 22, 2010, was normal. Tr. 286. A liver biopsy was performed on May 3, 2010, but the records do not indicate the results of this test. Test results from April 27, 2010, show she tested positive for rheumatoid arthritis. Tr. 282. On August 13, 2010 a radiology report indicates mild to moderate arthritic changes in both hands.

Tr. 328.  Plaintiff received follow up care for hepatitis C throughout 2010 and 2011.  Tr.287-90, 260, 262, 339, 325, 326, 340.

Plaintiff was seen in the emergency room on December 27, 2010, complaining that she "hurts all the time" and "would like to die today."  A urine screen detected cocaine.  Tr. 305-14.  She was seen again at the emergency room on March 9, 2011, for a refill of her prescription and complaining of pain in her right hip that radiates down her leg and left arm weakness.  Tr. 360-65.

A radiology report from June 7, 2011, shows that a scan of plaintiff's pelvis and hips was normal.  Tr. 373.  A scan of her cervical spine also dated June 7, 2011, shows early small anterior spurring at C5, C6 and C7.  Tr. 374.  A report dated July 8, 2011, shows a scan of her lumbar spine was normal.  Tr. 372.  On November 3, 2011, plaintiff underwent an EMG and nerve conduction study.  She had reported a six month history of back pain and right lower extremity numbness and tingling.  The results showed no evidence of right lumbosacral radiculopathy.  Tr. 371.

### 7. *H & P Medi Consultants, Scott C. Chapman, M.D.*

On August 23, 2010, plaintiff was seen by Dr. Chapman for a disability evaluation.  She reported that she suffered from hepatitis C, lupus, rheumatoid arthritis, drug abuse, and depression.  She stated that she was diagnosed with hepatitis C in May 2009 at drug rehab and was scheduled to start an anti-viral treatment in September 2010 at Moss Regional.  Plaintiff reported that she was diagnosed with lupus and rheumatoid arthritis in February 2010.  She described her symptoms as diffuse joint pain, fatigue, and problems with concentration and memory.

Plaintiff reported a history of drug abuse for five years and treatment in detox, a treatment center, and a half way house for six months. She acknowledged one relapse and stated that she was not currently being followed for drug abuse. She also reported a long history of depression and stated that she was being seen by a physician at Moss Regional, was on medication, and her symptoms have somewhat improved.

Dr. Chapman's physical exam revealed mild tenderness in the upper right quadrant of the abdomen, and diffuse moderate tenderness in her knees, elbows, IP joints, and spine. She displayed 5/5 motor strength throughout, her grip strength and manual dexterity were within normal limits, and her gait and movement were normal. Her mental status was appropriate and normal in all respects. His impression following the exam was that due to her lupus and rheumatoid arthritis she would probably have problems with joint pain and soft tissue tenderness for the rest of her life. He recommended that she continue with appropriate treatment for her hepatitis C, and noted that her medications for depression have improved her symptoms. He recommended that she be sent to a support group to reduce her chances of drug abuse relapse. Tr. 292-95.

### 8. *Lake Charles Mental Health*

Plaintiff was seen at Lake Charles Mental Health on April 27, 2010, and reported that she has suffered from depression all her life and it has become worse in the last four months. She reported trouble sleeping, low concentration, and low energy. She denied suicidal ideation or mood swings. She reported a history of cocaine and alcohol abuse. She was diagnosed with dysthymia (chronic depression), major depressive disorder, and polysubstance dependency in early remission. Tr. 346-48.

On August 27, 2011, plaintiff reported that she felt she was doing well on the medications and did not want to change her prescriptions.  She denied suicidal ideations and psychotic symptoms.  She complained of anxiety and reported that she is still abusing cocaine and Bensodiazepines "when they are there."  She was told to return in three months or sooner if needed to discuss medications.  Tr. 345.

The next records from Lake Charles Mental Health are dated March 22, 2011.  At this visit plaintiff reported that she was hospitalized in Lafayette in December for alcohol, cocaine and marijuana.  She had a positive urine drug scree for cocaine and opiods on this visit.  She reported that she had not taken her medication in a month.  She was referred to a co-occurring group, and a wellness recovery action plan group, and to narcotics anonymous.  Her medications were continued except that Wellbutrin was discontinued.  Tr. 344.

### 9.  *Charles Lee, M.D.*

On September 7, 2010, Dr. Lee opined that plaintiff possessed the residual functional capacity to perform light work.  He found that she was capable of occasionally carrying 20 pounds and frequently carrying 10 pounds.  She could stand and/or walk and sit for 6 hours in an 8 hour workday.  She was not limited in her ability to push and/or pull.  She could frequently climb stairs, balance, and occasionally stoop, kneel, crouch, and crawl.  She was restricted from climbing ladders, ropes and scaffolds.  He found no manipulative, visual, communicative, or environmental limitations.  Tr. 60-61, 297.

### 10. *Jerry L. Whiteman, Ph.D.*

On November 11, 2010, Dr. Whiteman conducted a mental status evaluation.  Plaintiff stated that her chief complaint was depression which she has suffered from for about fifteen years.  She also noted problems associated with lupus, arthritis, and hepatitis C.  She gave a

history of hospitalization for suicide watch at St. Patrick's Hospital and substance abuse rehab in 2009. She denied using cocaine since February 2010. She reported trouble sleeping which she attributed to pain. At the evaluation she reported her pain was a nine on a scale of one to ten.

Plaintiff stated that she performs most household chores with help from friends, but she cannot sweep, mop, or stand for extended periods of time. Her leisure interests include visiting with friends and gardening.

Her mental status was characterized as adequately oriented in all spheres. Her general fund of information and long term memory skills were in the low average range and short term memory and concentration skills were adequate. Her intermediate memory was good. Plaintiff's pace and persistence were slow, her judgment and insight are appropriate, and she possesses adequate capabilities for abstract thinking.

Dr. Whiteman's opinion following his examination and review of prior treatment data was that plaintiff's cognitive abilities are in the low average range. He found that she has limited functioning due to pain. Her social interactions are limited to activities around the home. Her ability to manage personal finances and her memory functions are adequate and her concentration and attention skills are within normal limits. Tr. 299-302.

### IIII.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
### LAW AND ANALYSIS

#### A. Burden of Proof

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[1]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which

---

[1] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work.  *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled because while she was not capable of performing her past relevant work, her RFC allowed her to perform other jobs that existed in significant numbers in the national and local economy.

### B.  Plaintiff's Claims

In her appeal plaintiff argues that substantial evidence does not support the Commissioner's decision and the decision is contrary to law.  Specifically, she sets forth the following statement of error:

> The ALJ failed to apply proper legal standards when assessing the claimant's residual functional capacity; the ALJ failed to conduct a function-by-function assessment of the claimant's exertional abilities as required by SSR 96-8p prior to assigning an exertional level.

Plaintiff argues that the ALJ failed to properly evaluate her RFC because he failed to perform a function-by-function analysis as required by Social Security Ruling ("SSR") 96-8p. She maintains that the ALJ failed to provide a narrative discussion pointing to evidence that supports his findings as to her exertional functioning, i.e. her ability to walk, stand, lift, and carry. Plaintiff argues that her case is similar to the case of *Myers v. Apfel,* 238 F.3d 617 (5th Cir. 2001), where the Fifth Circuit found that remand was required when the ALJ failed to fully

address the claimant's ability to stand, walk, and push/pull and whether or not she could perform these demands on a regular and continuing basis.

The Commissioner contends that the ALJ properly found that plaintiff could perform the exertional requirements of light work as defined by 20 C.F.R § 416.967(b), that is, plaintiff could lift and/or carry 20 pounds occasionally and less than 10 pounds frequently, sit for six hours during an eight-hour workday, and stand and/or walk for six hours during an eight hour workday. The Commissioner argues that SSR 96-8p does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Relying on the Fifth Circuit case of *Onishea v. Barnhart,* 116 Fed App'x. 1 (5th Cir. 2004), the Commissioner asserts that the ALJ can properly rely on an RFC assessment by a state agency medical consultant provided it is a function-by-function assessment and is not conclusory.

Although Social Security Rulings do not have the force of law, they are binding on all components of the Social Security Administration and are to be relied upon as precedent in adjudicating other cases. *Spellman v. Shalala,* 1 F.3d 357, 361 n.7 (5th Cir.1993), *James v. Astrue,* 2011 WL 202140 (W.D. La. Jan. 18, 2011). SSR 96-8p provides that "the RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." 1996 WL 374184, *3 (S.S.A. 1996), "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). *Id.* at *7.

In this case the ALJ found that plaintiff had the RFC to:

> Perform light work as defined in 20 C.F.R. 416.967(b) except as follows: must periodically alternate standing and sitting to relieve pain and discomfort; has postural limitation and limited to occasional climbing of ramps and stairs, balancing, stooping,

> kneeling, crouching and crawling; should never climb ladders, ropes or scaffolds, and should not work in Food Service Industry. In addition, the individual has the following non-exertional limitations: can perform work requiring only 1-2 step procedures or instructions; work would primarily be with things and data instead of primarily working with people, and [the] individual should have only occasional contact with co-workers, supervisors and general public.

Tr. 13. As the Commissioner points out, by making the express finding that plaintiff could perform light work as defined in 20 C.F.R. 416.967(b)[2] the ALJ did, in fact, determine that plaintiff could lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently. A review of the ALJ's decision also reveals that he reviewed in detail all of plaintiff's medical records and relied in part on the state agency medical consultant's functional analysis. The ALJ stated "I gave great weight to the State Agency medical consultant and Single Decision Maker's (SDM) residual functional capacity assessment as these findings and conclusions correlate with my own determination of non-disability except as modified herein." Tr. 17.

In *Myers v. Apfel,* 238 F.3d 617 (5th Cir. 2001), the case relied on by plaintiff, the Fifth Circuit found that the ALJ's review of the claimant's functioning was insufficient because he failed to fully address all of the strength demands of sedentary work in accordance with SSR 96-8p. However, the court also found that the ALJ relied on testimony of a physician that had not examined the claimant, failed to resolve inconsistencies in the evidence, based his conclusions on an incomplete reading of the treating physicians' reports, and that substantial evidence did not support his decision.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967.

In cases decided after *Myers* the Fifth Circuit clarified its position on SSR 96-8p and whether or not reversal is required if an ALJ fails to fully address each of a claimant's functioning areas.  In *Onishea v. Barnhart,* 116 F.App'x. 1 (5th Cir. 2004) the claimant sought reversal arguing that the ALJ failed to perform a function-by-function analysis of her ability to do work-related activities in accordance with SSR 96-8p and *Myers v. Apfel.*  The court affirmed the ALJ's decision and found that the ALJ employed the correct legal standard because he based his assessment of her RFC in part on the state examiner's function-by-function analysis of her exertional limitations.

In another case, *Beck v. Barnhart,* 205 Fed. App'x. 207 (5th Cir. 2006), the claimant argued that the lack of a function-by-function analysis by the ALJ of her capacity to perform work-related activities required reversal and remand.  The court found that the ALJ's RFC determination was supported by substantial evidence and that it satisfied the standard announced in *Myers.*  According to the court, "[t]he ALJ based his decision in part on the medical reports … which contain a general evaluation of [the claimant's] mobility and a function-by-function analysis of the impact of her impairments on her ability to perform various tasks." *Id.* at 213.

In the case currently before the court the ALJ's RFC was based in part on the function-by-function analysis performed by Dr. Charles Lee.  *See* Tr. 60-61.  As stated above, when an ALJ's RFC assessment is based at least in part on a function-by-function analysis of the claimant's exertional limitations contained in a medical report, the legal standard set forth in *Myers* and SSR 96-8p is satisfied.

For these reasons we find plaintiff's argument without merit.

V.
CONCLUSION

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.  It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 8th  day of May, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE